UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENNIS V. WHITE and JUDITH A. WHITE, husband and wife,<br><br>Plaintiff,<br><br>v.<br><br>HOMEFIELD FINANCIAL, INC., a California corporation doing business in the State of Washington; COUNTRYWIDE HOME LOANS, INC. is a New York corporation doing business in the State of Washington; and CORPORATION SERVICE COMPANY a Delaware corporation doing business in the State of Washington,<br><br>Defendants. | CASE NO. C07-5114RJB<br><br>ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Countrywide Home Loan, Inc.'s, Motion for Summary Judgment (Dkt. 48) and Motion to Strike Declaration of Sandra Recchione (Dkt. 65). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

I. PROCEDURAL HISTORY

On March 3, 2007, Plaintiff Dennis V. White and Plaintiff Judith A. White ("Plaintiffs") filed a complaint in this Court alleging that Defendant Homefield Financial, Inc., ("Homefield"), Defendant Countrywide Home Loans, Inc. ("Countrywide"), and Defendant Corporation Service

ORDER
Page 1

Company violated the Washington Consumer Protection Act, RCW §§ 19.86.010 - .920, committed fraud, breached a fiduciary duty, and violated the Federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1693r. Dkt. 1 ("Complaint").

On December 28, 2007, the Court issued an order that dismissed Defendant Homefield. Dkt. 49. Although that order and the accompanying stipulation do not disclose the reason for dismissal of Defendant Homefield, the parties agree that Plaintiffs reached a settlement with Homefield for $20,000. Dkt. 53 at 4; Dkt. 65 at 3. Countrywide claims that the settlement was for full and final satisfaction of Plaintiffs' TILA damage claims against Homefield. Dkt. 65 at 3. Plaintiffs state only that they "settled their claims with Defendant Homefield for $20,000." Dkt. 53 at 4.

Also, on December 28, 2007, Countrywide filed a motion for summary judgment. Dkt. 48. On January 14, 2008, Plaintiffs filed a response. Dkt. 53. On January 25, 2008, Defendant filed a reply. Dkt. 65. In the reply, Defendant included a Motion to Strike Declaration of Sandra Recchione ("Recchione Decl.") that was filed in support of Plaintiffs response. *Id.* at 11-12.

These motions are now ripe for consideration. This order does not address the liability of Defendant Corporation Service Company.

## II. FACTUAL HISTORY

In September of 2005, Countrywide contacted Plaintiffs, informing them that they were pre-approved to receive an offer to refinance their home with a lower monthly payment and interest rate. Complaint, ¶ 3.1; Dkt. 55 (offer letter). In October of 2005, Plaintiffs and Homefield's loan officer, Jason Meyer, completed a preliminary loan application. Complaint, ¶ 3.1. In November of 2005, Plaintiffs and Homefield finalized the terms of Plaintiffs' loan and set a closing date of November 9, 2005. *Id.* Plaintiffs and the closing agent rescheduled the closing to November 10, 2005. *Id.*

It is undisputed that the closing occurred at Plaintiffs' home on November 10, 2005. The parties, however, do dispute what documents Plaintiffs received at the closing. Plaintiffs claim

1 that they did not receive accurate copies of the Notice of Right to Cancel form because the
2 notices they did receive incorrectly stated both the date of consummation of the loan transaction
3 and the date the rescission period expired. Dkt. 53 at 3; Dkt. 56. Countrywide claims that
4 Plaintiffs received adequate notices of the right to cancel because they each signed a Notice of
5 Right to Cancel form acknowledging "THE RECEIPT OF TWO (2) COMPLETED COPIES OF
6 THIS NOTICE OF RIGHT TO CANCEL." Declaration of Gregory R. Fox ("Fox Decl."), Dkt.
7 50, Exh. C.

8      It is also undisputed that, in the loan documents, Plaintiffs' monthly income was
9 significantly overstated. Plaintiffs claim that Homefield's agent, Mr. Meyers, inflated Plaintiffs'
10 monthly income on the loan documents without Plaintiffs' consent. Complaint, ¶ 3.1.
11 Countrywide claims that Plaintiffs signed the loan documents with full knowledge of the misstated
12 monthly income amounts and with the understanding that Homefield would be selling the loan to
13 Countrywide. Dkt. 48 at 5; Fox Decl., Exh. A.

14      On or about February 27, 2007, Plaintiffs received a check in the amount of $2,790 from
15 Defendant Homefield for what Plaintiffs claim was a refund of an "undisclosed mortgage broker
16 fee" charged by Homefield at loan origination. Dkt. 53 at 1-2.

17      In March of 2006, Plaintiffs asked Countrywide for a copy of the loan file. Dkt. 58. On
18 November 9, 2006, Plaintiffs requested rescission of the loan from Countrywide. Declaration of
19 Neil Butala, ("Butala Decl.") Dkt. 52 at ¶ 4. Countrywide has declined to honor that rescission
20 request. Dkt. 48.

21

22 <center>III. MOTION TO STRIKE</center>

23      Countrywide has moved the Court to strike the Recchione Decl. because "it is not relevant
24 to the issues before the Court, and [it] contains improper opinions regarding legal standards and
25 conclusions of law." Dkt. 65 at 11-12. Under Fed. R. Civ. P. 12(f), the Court may:

26     strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
27
       (1) on its own; or
28

ORDER
Page 3

> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Although Local Rule 7(g) mentions motions to strike material attached to submissions of opposing parties, Fed. R. Civ. P. 12(f) provides the substantive legal standard. In this case, Countrywide must be relying on the "immaterial" part of this rule. *See* Dkt. 65 at 12 ("Ms. Recchione's unfounded statements are irrelevant and therefore inadmissible"). "[B]ecause motions to strike on [immaterial] grounds are not favored, often being considered 'time wasters,' they usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1382, at 807-10 (1969) (footnotes omitted).

It is important to note that Countrywide has not moved to strike Plaintiffs' pleading, it has moved to strike *evidence in support* of the pleadings to the extent that the declarant "opines on the law." *See* Dkt. 65 at 11-12 (emphasis added). For a summary judgment motion, as is currently before the Court, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(f). The Court, therefore, should consider whether the affidavit contains facts that would be admissible in evidence. Countrywide has failed to show that the Recchione Decl. contains no possible facts that may be admissible in evidence. Moreover, it seems like a waste of time for the Court to parse this affidavit to the extent that it "opines on the law." Therefore, the Court should consider the evidence submitted in support of Plaintiffs' pleadings for facts that may be admissible in evidence. Accordingly, the Court should deny Countrywide's Motion to Strike the Recchione Decl.

## IV. SUMMARY JUDGMENT

Countrywide has moved the Court for summary judgment on Plaintiffs' TILA and Washington Consumer Protection Act ("CPA") claims. Dkt. 48 (Although Plaintiffs also claim fraud and breach of fiduciary duty, Countrywide argues that "the plaintiffs' [sic] confirmed that

ORDER
Page 4

their fraud and breach of fiduciary duty claims are not applicable to, or claimed against, [Countrywide]." *Id.* at 22. Plaintiffs seem to concede this point by only responding to the TILA and CPA claims. *See* Dkt. 53. Accordingly, the Court should only address Plaintiffs' TILA and CPA claims against Defendant Countrywide.)

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B.  Truth In Lending Act**

In their complaint, Plaintiffs claim that Countywide violated the TILA and that Plaintiffs are entitled to both statutory damages of up to $2000 per violation and rescission of the loan transaction. Complaint, ¶ 6.2.

**1.  Statutory Damages Under the TILA**

Countrywide argues that Plaintiffs' TILA claims for damages are barred because of Plaintiffs' settlement with Defendant Homefield, that those claims are barred by the applicable statute of limitations, and that those claims are not actionable against Countrywide as an assignee because no violation was apparent on the face of the documents. Dkt. 48 at 7-11.

Under the TILA, the prerequisites for the liability of an assignee state as follows:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a). Further, the rights upon the assignment of certain mortgages are that "[a]ny person who purchases or is otherwise assigned a mortgage referred to in section 103(aa) [15 U.S.C. § 1602(aa)] shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage . . . ." 15 U.S.C. § 1641(d)(1). Although this seems to extend the protections of the TILA to "all claims" relating to the mortgage, "[t]he preceding sentence does not affect rights of a consumer under subsection (a), (b), or (c) of this section or any other provision of this subchapter." 15 U.S.C. § 1641(d)(1). Therefore, liability of an assignee under the TILA is limited to violations of the TILA.

In addition, the TILA imposes other limitations and an offset of damages:

> (2) Limitation on damages. Notwithstanding any other provision of law, relief provided as a result of any action made permissible by paragraph (1) may not exceed--

ORDER
Page 6

> (A) with respect to actions based upon a violation of this title, the amount specified in section 130 [15 U.S.C. § 1640]; and
>
> (B) with respect to all other causes of action, the sum of--
> (I) the amount of all remaining indebtedness; and
>
> (ii) the total amount paid by the consumer in connection with the transaction.
>
> (3) Offset. The amount of damages that may be awarded under paragraph (2)(B) shall be reduced by the amount of any damages awarded under paragraph (2)(A).

15 U.S.C. § 1641(e)(1). Some district courts have interpreted this liability as analogous to common law tort liability where a plaintiff is only entitled to hold the original lender and the assignee jointly and severally liable. *See, e.g., Bynum v. Equitable Mortgage Group*, 2005 U.S. Dist. LEXIS 6363, *16-17 (D. DC 2005); *Coleman v. Equicredit Corp. of America*, 2002 U.S. Dist. LEXIS 969, *7 (N.D. Ill. 2002). In other words, "an assignee's liability can be no greater than the assignor's." *Bynum*, 2005 U.S. Dist. LEXIS 6363, at *16-17. While it appears that the Ninth Circuit has yet to address this question, Plaintiffs provide no contrary authority.

In their opposition to Countrywide's motion for summary judgment, Plaintiffs have not addressed the issue of what effect their settlement with Defendant Homefield has on the TILA damage claims against Countrywide. Countrywide claims that the settlement was in "full and final satisfaction" of Plaintiffs' damage claims relating to "pre-closing negotiations, disclosures and omissions by or between [Homefield] and [Plaintiffs]." Dkt. 65 at 1, 3. Plaintiffs do not dispute that factual claim. *See* Dkt. 53. Further, Plaintiffs have failed to address the impact of the refund check from Homefield for an "undisclosed mortgage broker fee." Most importantly, Plaintiffs have failed to establish that they are entitled to damages exceeding what they already recovered through refund and settlement. Therefore, the Court should dismiss Plaintiffs' TILA claims for statutory damages against Countrywide because Plaintiffs have failed to raise an issue of material fact as to whether Countrywide's liability is greater than Plaintiffs' refund from and settlement with the original loan lender, Defendant Homefield.

Because the Court finds that Defendant Homefield and assignee Countywide are jointly

ORDER
Page 7

1 and severally liable for Plaintiffs' claims for damages under the TILA, and that Plaintiffs have

2 settled all the TILA statutory damage claims with Homefield, the Court need not discuss

3 Countrywide's other arguments regarding statutory damages.

### 2. Rescission Under the TILA

In their complaint, Plaintiffs claim that the Court should enforce their request for rescission of the loan from Countrywide.

> [I]n the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. . . .

15 U.S.C. § 1635(a).

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. . . . The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
>   (I) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
>   (ii) The consumer's right to rescind the transaction.
>
>   (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
>   (iv) The effects of rescission, as described in paragraph (d) of this section.
>
>   (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1). Plaintiffs claim that they never received the notices required by 12 C.F.R. § 226.23(b)(1) and that they are therefore entitled to rescission and damages under the TILA. Complaint, ¶ 6.2. Countrywide argues that 1) Plaintiffs' inequitable conduct warrants denial of their rescission claims, 2) Plaintiffs are unable to repay the principal amount of their loan, 3) Plaintiffs have failed to seek rescission from Bank of New York, the current holder of the loan, 4) there is a statutory limit on assignee liability, and 5) Plaintiffs' request for rescission of their loan was untimely. Dkt. 48 at 11.

ORDER
Page 8

I.  *Inequitable Conduct*

First, Countrywide claims that Plaintiffs knowingly and intentionally doubled their income level on the income loan application. Fox Decl., Exhs. B, D. Countrywide argues that this is inequitable conduct and, therefore, the Court should not allow Plaintiffs to rescind their loan. *Id.* Plaintiffs counter that they were the victims of Defendant Homefield's and Homefield's agent, Mr. Myers', misconduct. Dkt. 53 at 11; Declaration of Judith White ("White Decl."), Dkt. 61. Therefore, there is at least a question of material fact as to the inflated income levels stated in the loan documents and whether Plaintiffs acted in an inequitable manner.

ii.  *Plaintiffs' Ability to Pay the Principal Balance of the Loan*

Second, Countrywide argues that the Court should dismiss Plaintiffs' claim for rescission because Plaintiffs are unable to pay the principal balance of the loan. Dkt. 48 at 11. While it is true that a trial court may deny a rescission based on the borrowers' financial capabilities, such a denial is not automatic. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) ("a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations.") Countrywide's argument fails for at least two reasons: 1) neither party has provided the Court with a dollar amount representing Plaintiffs' remaining obligation after a valid rescission, and 2) Plaintiffs have not had an opportunity to submit evidence to the Court regarding their ability to repay that remaining obligation. Therefore, the Court should not dismiss Plaintiffs' claim for rescission based on whether Plaintiffs are able to pay any remaining post-rescission obligation.

iii.  *Countrywide as the Lender*

Third, Countrywide claims that Plaintiffs' loan was assigned to Countrywide in November 2005, and subsequently assigned to Bank of New York. Butala Decl. at ¶¶ 2-3. Thus, Countrywide argues that it is only the current servicer of the loan and not the lender. *Id.* Plaintiffs maintain that "at all relevant times, Countrywide has been the relevant assigned lender in this case." Dkt. 53 at 15. Countrywide failed to address this argument in its reply brief. *See* Dkt. 65. Thus, Plaintiffs have at least established an issue of material fact as to whether Countrywide

is the actual lender instead of only the current loan servicer.

          iv.    *Assignee Liability*

Fourth, under the TILA, an assignee is liable for violations that appear on the face of the loan documents. 15 U.S.C. § 1641(e). The creditor must deliver, to each consumer, two notices of the right to rescind that *correctly* identifies the date the rescission period expires. 12 C.F.R. § 226.23(b)(1)(v)(emphasis added). Plaintiffs claim that they were given copies of the Notice of Right to Cancel form that incorrectly stated the date of consummation of the loan transaction (November 9, 2005) and that did not inform them of the date that the rescission period expired. Dkt. 53 at 3; Dkt. 56. Countrywide argues that what Plaintiffs received is irrelevant because its liability as an assignee only extends to what appears on the documents that are contained in the loan file. Dkt. 48 at 20. The two Notice of Right to Cancel forms in the loan file show handwritten alterations to the date of consummation because the loan closed on November 10, 2005, instead of the originally scheduled date of November 9, 2005. Fox. Decl., Exh. C at 15, Exh. D at 15. Further, both of those forms state that the deadline for Plaintiffs to exercise their right to rescind was November 15, 2005. *Id.* In other words, Countrywide argues that it accepted liability for a $1,026,534.37, 30 year agreement based on handwritten alterations to one of the simplest, yet most important documents contained in the loan file, the notice of the right to rescind. This argument is difficult to understand.

Countrywide contends that it is entitled to judgment as a matter of law on this issue citing *In re Meyer*, 379 B.R. 529, 2007 WL 4209094 (Bankr. E.D. Pa. 2007) and *In re Washington*, 2007 WL 846658 (Bankr. E.D. Pa. 2007). Although the Ninth Circuit does not appear to have addressed this question, TILA's assignee liability provision has been interpreted by other courts as meaning that a TILA claim may be asserted against an assignee only for "violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents." *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998). Thus, the issue before the Court is whether, in this case, Countrywide should have been on notice that something was wrong with the notice of right to cancel forms in the loan file, that is, whether the handwritten alterations

ORDER
Page 10

1  to the loan documents would have been spotted by a reasonable person as a potential violation of
2  the TILA.  In this regard, the cases that Countrywide cites are factually distinguishable from this
3  case because in those cases it is not apparent whether the closing agent crossed out the original
4  closing date and wrote in the rescheduled closing date on the copies given to the borrowers.  In
5  this case, there is a question of material fact whether a reasonable person would have exercised
6  more care than Countrywide did considering the magnitude of the assumption of liability and the
7  power of extending the rescission period from three days to three years.  12 C.F.R. §
8  226.23(a)(3)("The consumer may exercise the right to rescind until midnight of the third business
9  day following consummation, delivery of the notice [the right to rescind], or delivery of all
10 material disclosures, whichever occurs last. If the required notice or material disclosures are not
11 delivered, the right to rescind shall expire 3 years after consummation . . .").

12          Therefore, the Court should not grant Countrywide judgment as a matter of law because
13 there is a material issue of fact as to whether the violation that Plaintiffs are claiming would have
14 been apparent to a reasonable person on the face of the documents.

15                  v.      *Time Period for Rescission*

16          Finally, Countrywide argues that Plaintiffs' request for rescission is time barred.  Dkt. 48
17 at 15.  The creditor must deliver to each consumer two notices of the right to rescind that
18 correctly identifies the date the rescission period expires.  12 C.F.R. § 226.23(b)(1)(v).  As
19 mentioned above, "[t]he consumer may exercise the right to rescind until midnight of the third
20 business day following consummation, delivery of the notice [the right to rescind], or delivery of
21 all material disclosures, whichever occurs last. If the required notice or material disclosures are
22 not delivered, the right to rescind shall expire 3 years after consummation . . ." *Id.* §
23 226.23(a)(3).  Countrywide states that "written acknowledgment of receipt creates the rebuttable
24 presumption that the required disclosures were delivered."  15 U.S.C. § 1635(c).   As mentioned
25 above, Plaintiffs claim that, at the time of closing, they were not given two properly completed
26 forms entitled Notice of Right to Cancel.  *See* White Decl.  Countrywide, however, has submitted
27 copies of the notices of the right to rescind from the loan file that bear Plaintiffs' signatures

28

ORDER
Page 11

1  acknowledging that each Plaintiff received two completed copies of that notice.  *See above.*

2  Therefore, the procedural posture of this claim is that, taking the facts in the light most favorable

3  to Plaintiffs, they must establish an issue of material fact to rebut the presumption that they

4  received the notices.  Considering that the notices in the loan file contained handwritten

5  alterations and that Plaintiffs have submitted notices that are not identical to the documents in the

6  loan file, Plaintiffs have established an issue of material fact as to whether they received properly

7  completed notices of their right to rescind.

8        In summary, Plaintiffs have established the required material issues of fact that are

9  necessary to overcome each of Countrywide's arguments for summary judgment on Plaintiffs'

10  claim for rescission under the TILA.

11  **C.**     **Consumer Protection Act**

12        Plaintiffs claim that "TILA violations found against Defendant Countrywide constitute

13  potential Consumer Protection Act (CPA) violations."  Dkt. 53 at 15.  Countrywide contends that

14  Plaintiffs' "CPA claim fails as a matter of law in that Countrywide was not involved in the

15  origination of the loan and had no relevant communications with the plaintiffs prior to the closing

16  of the loan."  Dkt. 48 at 23.

17        Washington's Consumer Protection Act (CPA), RCW 19.86.010 - .920, creates a private

18  cause of action. "Any person who is injured in his or her business or property by a violation of

19  RCW 19.86.020 ("unfair methods of competition and unfair or deceptive acts or practices in the

20  conduct of any trade or commerce"). . . may bring a civil action."  RCW 19.86.090.  The elements

21  of a private CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or

22  commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her

23  business or property; and (5) such injury is causally linked to the unfair or deceptive act.

24  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

25        Under the TILA, an assignee is liable for certain acts or omissions of the original creditor.

26  *See above.*  That does not mean that an assignee liable under the TILA is automatically liable

27  under the CPA.  When a plaintiff claims the defendant violated both the TILA and the CPA,

28

ORDER
Page 12

violations of the TILA may evidence the CPA element of an unfair or deceptive act or practice. *See, for example, Anderson v. Wells Fargo Home, Mort.,* 259 F.Supp.2d 1143, 1147-48 (W.D. Wash 2003). Plaintiffs, however, have provided no authority for the proposition that an assignee is liable under the CPA for possible violations committed by the loan originator and not the assignee. *See* Dkt. 53. Countrywide argues that Plaintiffs "cannot establish a CPA violation against Countrywide even if the Court determines that Homefield violated TILA in originating the plaintiffs' [sic] loan." Dkt. 48 at 23(*citing Schmidt v. Cornerstone Investments, Inc.*, 115 Wn.2d 148, 165 (1990)). In *Schmidt*, the Washington Supreme Court upheld the dismissal of the plaintiffs' CPA claims against an attorney/escrow agent because plaintiffs failed to provide sufficient evidence that *he was involved in* the marketing or soliciting of plaintiffs. *Id.*(emphasis added). Likewise, in this case, Plaintiffs have failed to establish that *Countrywide was involved* in the marketing or solicitation of Plaintiffs for the original loan transaction with Defendant Homefield. Therefore, Plaintiffs have failed to establish a material issue of fact as to whether Countrywide may be held liable for Homefield's deceptive acts or practices. Accordingly, the Court should dismiss Plaintiffs' CPA claims against Countrywide.

## V. ORDER

Therefore, it is hereby:

**ORDERED** that

1) Defendant Countrywide Home Loan, Inc.'s, Motion to Strike Declaration of Sandra Recchione (Dkt. 65) is **DENIED**;

2) Defendant Countrywide Home Loan, Inc.'s, Motion for Summary Judgment (Dkt. 48) is **GRANTED in part** and **DENIED in part** as follows:

- Plaintiffs' claims for statutory damages under the TILA against Countrywide are **DISMISSED**;

ORDER
Page 13

- Plaintiffs' claim for damages under the Washington Consumer Protection Act against Countrywide is **DISMISSED**; and

- Plaintiffs' claim for rescission under the TILA may proceed.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 22nd day of February, 2008.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge